**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| EL PASO COUNTY; RICHARD WILES, SHERIFF OF EL PASO COUNTY in his official capacity; and the TEXAS ORGANIZING PROJECT EDUCATION FUND, | § § § § § § | |
| *Plaintiffs,* | § § | CIVIL ACTION NO. _____ |
| v. | § § | |
| THE STATE OF TEXAS; and GOVERNOR GREG ABBOTT; ATTORNEY GENERAL KEN PAXTON; DIRECTOR STEVE MCCRAW, THE TEXAS DEPARTMENT OF PUBLIC SAFETY, all sued in their official capacity, | § § § § § § § | |
| *Defendants.* | | |

---

**PLAINTIFFS' COMPLAINT**

**FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

## I.  PRELIMINARY STATEMENT

1.      Senate Bill 4 ("SB 4"), also known as the "Show Me Your Papers Bill," is an unprecedented, cruel, and vague law that is aimed at the heart of Texas. It violates the Constitution of the United States, the Texas Constitution, and federal law and should be immediately and permanently enjoined.

2.      There are many legal flaws with SB 4. Racial animus fueled SB 4's enactment, tainting the entire law with an impermissible legislative purpose. The law's language is unconstitutionally vague, chills policy dissent in violation of the First Amendment and leaves those potentially subject to its mandates without meaningful notice of what acts are forbidden.

SB 4 will make all Texans less safe by eroding the discretion of our local law enforcement and law enforcement on college campuses, interfering with the chain of command and the existing decision-making processes of local officials, and preventing the reporting of crimes. Finally, SB 4 invites racial profiling, permitting local officers to demand "papers" from virtually any person in Texas at any time. History and logic supports that all Texans will not be equally subject to this harassment: Texans of Hispanic heritage and immigrants and their families, particularly those from Mexico, Central American and other Spanish-speaking countries, will be targeted.

3.      This historic and unconstitutional attack on the core values and identity of Texas is especially harmful to the County of El Paso — comprised of residents, employees, and visitors — and to the Texas Organizing Project Education Fund (TOPEF) the population it serves.

4.      El Paso is unique among Texas counties: it is bilingual, bi-national, multi-cultural, and geographically distinct. For instance, El Paso has over 800,000 residents, is over 82% Hispanic and over 25% of its residents are foreign born. It is part of the largest border community in the United States, and one of the safest communities in the nation, leading the country in public safety. El Paso takes great pride in protecting all its residents and its values, and has been a leader in the fight against discrimination of all types for decades, with a special focus on protecting the civil rights of its immigrant communities. In its attack upon immigrants of all nationalities, against Mexican Americans, and against Hispanic communities, SB 4 stands in stark contrast to El Paso's history and identity.

5.      It is insulting to the people and leaders of El Paso that the Texas Legislature continues to erode the policy decision-making and sovereignty of local communities based on irrational, unfounded "fears" of immigrants. As it has done for hundreds of years, El Paso will protect its heritage, identity and adherence to constitutional values such as equality and justice — and will

do so with everything that it has. It is for these reasons and more, that El Paso files this suit seeking declaratory and injunctive relief.

**6.**     TOPEF is an education organization based in San Antonio, Houston and Dallas. More than half of TOPEF's employees and the people they serve identify as Latino; many are from immigrant, mixed-status families. As an organization, TOPEF will be particularly injured by SB 4's unconstitutional provisions and harms, including racial profiling.

**7.**     The County of El Paso and its Sheriff, Richard Wiles, along with TOPEF on behalf of their employees and the people they serve (collectively, the Plaintiffs), seek declaratory and injunctive relief against the State of Texas, Texas Governor Greg Abbott, Texas Attorney General Ken Paxton, and Director Steve McCraw of the Texas Department of Public Safety for the following legal violations in connection with the enactment, administration, and prospective enforcement of SB 4: 1) SB 4 was adopted with an impermissible purpose which violates the Fourteenth Amendment's guarantee of the equal protection of laws; 2) SB 4 is unconstitutionally vague and violates the Fourteenth Amendment's due process clause; 3) SB 4 violates the Fourth Amendment protection against unreasonable searches and seizures; 4) SB 4 violates the supremacy clause, Art. V § 2, of the United States Constitution, as federal immigration enforcement is wholly dedicated to the federal government and may not be usurped by the states; 5) SB 4 violates the First Amendment prohibition against governmentally-controlled speech or expression by disallowing the endorsement of a policy by public officials that prohibits or materially limits the enforcement of immigration laws; and finally, and 6) SB 4 violates the Texas Constitution.

**8.**      In addition, El Paso County and Sheriff Wiles also seek a declaratory judgment that El Paso's current policies regarding federal immigration enforcement comply with state and federal law and do not violate SB 4.

## II.      JURISDICTION AND VENUE

**9.**      This action raises federal questions under the United States Constitution, particularly Article 1, and the First, Fourth, Fourteenth Amendments. In addition, this court has jurisdiction over these constitutional claims pursuant to 42 U.S.C. § 1983.

**10.**      The Court has jurisdiction under 28 U.S.C. §§ 1331, 1346. This court has further remedial authority under the Declaratory Judgment Act, 28 U.S.C. §2201-02.

**11.**      This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

**12.**      Venue lies in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## III.      PARTIES

**13.**      Plaintiff, El Paso County, Texas is, at all times relevant to this Complaint, a county located in Texas and is recognized as a legal subdivision of the State. Tex. Const. Art. 11 § 1. El Paso County has the constitutional and statutory authority to set policies and regulations, as well as administer programs for its residents in certain areas, including administering its county judicial system, and providing health and social services to many county residents regardless of their national origin. The County is composed of more than 800,000 residents, over 80% of

whom are Hispanic. More than 1 in 4 residents of El Paso County are foreign born. Over 72% of El Paso County household speak a language other than English at home. And because some residents may be present in the county without documentation, all residents—many of whom are ethnically, culturally, and linguistically indistinguishable from undocumented immigrants from Mexico—would become subject to the unconstitutionally discriminatory and invasive controls of SB 4. The County is the seat of government for its public officials, who face the injury of removal from office for endorsing or adopting a policy in violation of SB 4.

14.     El Paso County faces injury in fact from SB 4 in the form of substantial civil penalties for non-compliance with the law, as well as, tremendous budget uncertainty due to SB 4's unclear and vague standards and imminent enforcement, including fines of $25,000 per day of violation excluding the first day of that violation. The County faces mandamus and injunction for violating SB 4. In addition, it creates un-budgeted costs associated training its deputy sheriffs and administrative staff complex about federal immigration rules and laws.

15.     Uniquely, El Paso is under a federal court settlement agreement where it created a policy prohibiting the enforcement of civil immigration laws. El Paso also has adopted policies, which may violate SB 4's unconstitutional mandates. Specifically, the El Paso County Attorney's office has adopted a policy that prohibits its investigators from making inquiries into the citizenship or residency status for the purpose of determining whether an individual has violated civil immigration law or for the purpose of enforcing those laws.

16.     The threat of this enforcement is real and actual, as proven by the State of Texas' suit against several opponents of SB 4 filed recently in a federal court in Austin. Given the budgetary uncertainty created by SB 4, its imminent enforcement, and the Attorney General and

Governor's threats against the opponents of SB 4, El Paso County has pre-enforcement standing to bring this action and is currently injured by SB 4's unconstitutional mandates.

**17.**     Plaintiff, Richard Wiles, is the Sheriff of El Paso County. He is a judicial officer imbued with judicial discretion derived from the Texas Constitution. He faces removal from office for violating SB 4. This violation may include the endorsement of policy that limits the enforcement of immigration laws. Endorsement is undefined by the statue and may include expression for a policy in violation of SB 4. Sheriff Wiles is responsible for the enactment and enforcement of El Paso County's law enforcement policies and practices, including those governing compliance with Texas law and federal immigration detainers. Sheriff Wiles, as a law enforcement officer, also faces criminal sanction under SB 4 for failing to honor a civil detainer request.

**18.**     Finally, Sheriff Wiles' authority and discretion to administer the law and to ensure the public safety of the residents of El Paso is greatly diminished by SB 4. Sheriff Wiles has standing to bring this lawsuit and is injured by SB 4's unconstitutional mandates.

**19.**     Plaintiff, the Texas Organizing Project Education Fund (TOPEF), is an education organization with a focus working class neighborhoods in the cities of San Antonio, Houston, and Dallas, TOPEF works to improve the lives of low-income and working class Texas families through education, civil engagement and community organizing. TOPEF is incorporated in Texas.   TOPEF must expend resources to educate its employees and service community concerning SB 4. TOPEF has members in many counties in Texas, including Bexar, and Harris Counties. TOPEF is injured as an organization by SB 4. TOPEF has both organizational and associational standing to bring this lawsuit.

**20.**     Defendant, the State of Texas, is a free and independent sovereign state of the United States beholden to the principle of limited government enshrined in the United States and Texas Constitutions.

**21.**     Defendant Greg Abbott is the Governor of the State of Texas and signed SB 4 into law on May 7, 2017. He is the Chief Executive officer of the State of Texas and is responsible for the appointment of officials who administer state law enforcement. Governor Abbott is sued in his official capacity.

**22.**     Defendant Ken Paxton is the Attorney General of the State of Texas, which is an executive office that represents the State of Texas in all actions in which the State may be a party. As to his responsibilities for SB 4, he is the officer who shall seek mandamus or injunction if and when local entities violate SB 4. He is also the State officer given the sole authority to seek a *quo warranto* or a removal action against a public official who has violated SB 4. He is sued in his official capacity.

**23.**     Defendant Steve McCraw is the Director of the Texas Department of Public Safety (DPS). He is responsible for the policies and practices of the DPS officers and their enforcement of federal immigration laws. These officers, under SB 4, are given the authority during any lawful detention to inquire into the nationality of the detained party. Director McCraw is sued in his official capacity.

## IV.     FACTUAL BACKGROUND

### A.  General Facts

**24.**     SB 4 was signed into law on May 7, 2017. It is the most restrictive and prohibitive anti-immigrant state law of the fifty states.

25.      SB 4 prohibits local entities from adopting, enforcing, or endorsing a policy that prohibits or materially limits the enforcement of "immigration laws," a term without meaningful definition, or, as demonstrated by pattern or practice, materially limiting or prohibiting enforcement of such laws.

26.      SB 4 prohibits law enforcement agencies, as demonstrated by pattern or practice, from refusing to comply with an immigration detainer request issued by the federal government. An immigration detainer, also known as an "ICE hold," is a document by which the United States Immigration and Customs Enforcement (ICE) requests a local law enforcement agency to hold a person ICE suspects has violated civil immigration laws, so that ICE may gain custody, even if there are no underlying criminal charges to justify continued detention.

27.      In addition, SB 4 provides that local entities may not prohibit or materially limit a police officer — including safety officers on college campuses — from inquiring into the immigration status of a person under lawful detention or under arrest; inquiring into the detainee's place of birth; sending that information to the United States Citizenship and Immigration Services (USCIS), ICE, or any other federal agency; assisting or cooperating with a federal immigration officer; or allowing the federal government access to a jail to enforce federal immigration law.

28.      Any "citizen" residing in the jurisdiction of a local entity may file a complaint with the attorney general alleging that a jurisdiction has violated SB 4. The Attorney General may then seek a writ of mandamus or injunction to compel the jurisdiction to comply with SB 4.

29.      Jurisdictions that intentionally violate SB 4 face severe, escalating civil penalties, including fines of $25,000 per day of violation, excluding the first day of a violation.

30.      Public officials who violate SB 4 face removal from office via *quo warranto*. A public statement made by a public official is evidence for removal.

31.     Sheriffs, chiefs of police, constables, or any one with primary authority for administering a jail is criminally liable for knowingly failing to comply with a detainer request.

32.     In total, SB 4 attempts to force the hands of local government to enforce federal immigration laws. Law enforcement officials who do not comply will have committed crimes. Public officials who do not comply face removal. All law enforcement agencies and jurisdictions that opt to stay out of immigration enforcement face stringent civil liability. And, persons in Texas, particularly Mexican-Americans, those of Hispanic descent, and immigrants and their families, will be caught in the crossfire.

### B. Fourteenth Amendment – Unlawful Discrimination

33.     The Fourteenth Amendment to the United States Constitution guarantees persons the equal protection of the laws, and prohibits the government from treating persons differently than a similarly situated individual. To establish a Fourteenth Amendment violation the district court should examine factors detailed by the United States Supreme Court in *Village of Arlington Heights v. Metropolitan Housing  Development Corp.*, 429 U.S.  252, 265-68 (1977).

34.     The Supreme Court in *Arlington Heights* considered several factors as informing the intent decision. The following describe some of those facts here.

### i.     Events leading up to the adoption of SB 4, including Departures from Normal Procedure

35.     It is impossible to detach SB 4 from the cultural context in which it was passed. The 2016 election both in Texas and in the United States was riddled with nativist and anti-immigrant appeals. For instance, then-candidate Trump repeatedly claimed that illegal immigrants were "rapists," "criminals" roaming the streets, killing people and stealing jobs from American workers. He also publicly attacked persons of Hispanic descent, including by questioning the

impartiality of a United States federal judge presiding over a lawsuit related to Trump University.

36.     Likewise, Texas lawmakers and members of the State's leadership have made racial and xenophobic appeals in supporting laws like SB 4. In campaigns, Lieutenant Governor Dan Patrick called immigration into Texas an "invasion" and said that immigrants coming to Texas bring "third world diseases," such as leprosy. Without factual data, Patrick blamed immigrants for "a rising crime rate, overcrowded schools, an overburdened health-care system, and runaway growth in the state budget," and characterized illegal immigrants as "terrorists and drug runners."

37.     Texas Legislatures have considered so-called "Sanctuary Cities" and "Show Me Your Papers" bills in several forms in past legislative cycles, but SB 4 is the first, and most extreme, anti-immigrant measure to be enacted into law in Texas. It flew through the legislative process at an unusually fast pace, despite a chorus of public cries against it.

38.     SB 4 was filed by Senator Charles Perry on November 15, 2016, as a pre-filed bill. In Committee, the Senate State Affairs Committee held a day long committee hearing in which hundreds of people testified in person. Despite the volume of testimony, only a few people testified in person in support of the bill.

39.     On February 7, 2017, SB 4 was passed to engrossment and sent to the House. SB 4 was referred to the House Committee on State Affairs and was heard on March 15, 2017. Again, hundreds of people testified in person against the bill. Again, only a few testified in favor. On April 12, 2017, the bill was voted out of the House State Affairs Committee as substituted and sent to the Calendars Committee on April 20, 2017 at 2:22 PM. Just 48 minutes later, the bill was placed on the Emergency Calendar.

40.    The House considered SB 4 on April 26, 2017. Chairman Charlie Geren was the House sponsor for SB 4. In all, the House considered 145 amendments, accompanied by emotional debate, in a session that extended until 4:30 AM on April 27, 2017.

41.    The House debate contained many peculiar deviations from normal procedure. First, several points of order were overruled that under normal operating procedures would have been sustained. This included a point of order concerning the validity of a witness affirmation, which is the same category of point of order that was sustained against a previous "sanctuary cities" bill. Second, rather than cut off debate utilizing the House rules to move to the previous question, the House moved to have the vote for "Record Vote 456" used for all amendments that remained on the Speaker's desk. This rule suspension has not been used or adopted by the Texas House for any legislation other than bills on the local and consent calendars. This effectively cut-off debate without meaningful consideration of any amendment numbered 76 to 145.

42.    The tenor of the debate was also a major departure from the normal practices of the Texas House. The proponents of the bills used words like "illegals" to describe the targets of the legislation. Legislators were often heard laughing at the demise of ameliorative amendments, which lead to one lawmaker commenting about the disrespectful behavior during the debate. Chairman Geren said that the bill was aimed at "bad people." Throughout debate, opposition legislators were heckled by their colleagues.

43.    Also a departure from normal procedure was the consideration of the so-called "Schaeffer Amendment." An amendment proposed by Representative Matt Schaffer became the turning point of the debate. The Schaeffer Amendment would re-draft the House version of the bill and return it to the language of the Senate bill in substance.  Principally, that would have permitted immigration inquiries with any lawful detention rather than only after an arrest. A deal was

raised that, essentially, would have removed the Schaeffer Amendment from consideration in exchange for allowing 10-20 other  amendments to be considered, that would have been chosen by the Speaker of the House in response to concerns that had been raised about the measure. But there never was any real deal offered, as Representative Schaeffer showed no serious inclination to remove his amendment from consideration.

44.     Accordingly, in one night, SB 4 made Texas legislative history in the worst possible way. Meaningful points of order were denied outright and not considered despite the traditional practice of the House. The bill spent less than an hour in the Calendars Committee. It was subject to a tremendous volume of negative witness testimony in both the Texas Senate and Texas House committees, all of which failed to impede its swift progress through the legislature. The House cut-off debate by using a practice reserved only for bills on the local and consent calendar. A "deal" was offered that would have allowed the Speaker to choose which amendments but without any serious intention of compromise. Only one amendment offered by a lawmaker of color was adopted.

45.     SB 4 passed the Texas House and was sent to the Senate. The Senate concurred in House Amendments, and the Governor signed SB 4 into law on the evening of Sunday, May 7, 2017 in a private event not open to the media or the public. It is scheduled to become effective on September 1, 2017.

### ii.     Lack of Evidence Supporting the Purported Purposes of SB 4

46.     As noted above, the bill's sponsor, Chairman Geren, announced from the House floor that SB 4 was meant to uphold the rule of law and get at "bad people." He argued that SB 4 required local governments to enforce federal immigration law only to the extent it was requested by the federal government. He also said that the "Show Me Your Papers" component of the bill applied

only to people who were actually arrested and nearby bystanders. Finally, Chairman Geren claimed the bill simply requires jurisdictions to honor valid ICE immigration detainer requests. But each of these rationales has been disproven through the rejection of ameliorative amendments.

47.     First, SB 4 cannot be justified by any true concern about public safety. Amendments were rejected that targeted violent or dangerous offenders to be held pursuant to ICE detainer requests. Other amendments that would have provided training to local law enforcement concerning immigration enforcement were also rejected. Amendments that would have improved communication between immigrant communities and law enforcement were also rejected.

48.     There was voluminous testimony by law enforcement officials in both the Texas House and Senate committees that SB 4 will make Texas less safe. This testimony and evidence was rejected. Finally, the bill author and all proponents of the bill were made aware that the incidence of crime among the undocumented community was lower than that among U.S. citizens and Legal Permanent Residents.

49.     Similarly, the bill is also not about the need to police "bad" people or prevent criminal behavior. Once the Schaeffer Amendment was adopted, the will of the House was to allow this bill to apply to *anyone* detained by law enforcement not just to those who were arrested. Accordingly, SB 4 allows police officers and campus safety officers to make national origin inquires at traffic stops and other commonplace interactions with Texas residents. In an insult to local control, it prohibits jurisdictions from adopting policies preventing this plainly dangerous, discriminatory, and unconstitutional practice. SB 4 is thus not aimed only at those for whom probable cause supports their arrest.

50.     This bill also cannot be justified by the need to mandate compliance with voluntary ICE detainer requests. A floor amendment was offered that would have limited the bill by only requiring jurisdictions to honor ICE detainers. There was testimony in committee that local jurisdictions in Texas comply with 99% of ICE detainers. Texas has been rated the best state nationwide for adhering to ICE detainers. Chairman Geren also stated that he could not name a sanctuary city, county, or university or that did not intend to honor with ICE detainers. This bill was thus not passed to simply force compliance with ICE detainers, as such compliance is already the standard across Texas.

51.     A fervent belief in the "rule of law" also cannot justify SB 4, which allows the Attorney General (AG) to seek mandamus or injunction for entities that allegedly violate SB 4 and allows the AG to defend local entities from suits against those jurisdictions for complying with SB 4. However, despite its perfunctory language regarding non-discrimination, SB 4 provides no authorization for the AG to *enforce* that non-discrimination policy. Texas has recent and sordid history of not following federal law with regard to voting rights, gerrymandering, environmental law, and women's health. This bill is not about the rule of law.

52.     In fact, there is no rational policy justification for SB 4. Chairman Geren admitted on the House Floor that he did not consult any studies to justify or inform his decision to champion SB 4. He further stated there was no inciting event that lead to his sponsorship or drafting of SB 4.

53.     Every single policy rationale for this bill is disproven by the rejection of ameliorative amendments and on-point witness testimony. Without a doubt, the policy rationales for this bill are pre-textual and belie a sub-rational, impermissible purpose based in racial or national origin animus.

       **iii.**      **Disparate Impact**

54.     Chairman Geren on the House floor admitted that most immigrants in Texas are of Hispanic origin. He also admitted that ICE detainers are not always valid.

55.     In Texas, invalid ICE detainers and unlawful detentions unequally affect Mexicans, Mexican Americans, and those of Hispanic descent more broadly. SB 4, as signed into law, allows unconstitutional intrusions into the rights of these individuals based on racial and national origin animus.

### iv. The Plaintiffs' Experiences Demonstrate that Hispanics in Texas will be Adversely Affected

56.     Immigration enforcement has a sordid and discriminatory history in Texas and in the rest of the country.

57.     The anti-immigrant fervor in recent years in Texas is, in many ways, unique. The Plaintiffs have each been particularly affected.

58.     In El Paso, residents have suffered from illegal intrusions into their lives. One example is referred to locally as "the Bowie High School incident." During the morning of November 9, 1991, Benjamin Murillo, Coach of the Bowie High School football team, and Isaac Villalva and Cesar Soto, members of the Bowie High School varsity football team, drove to neighboring high school to watch the junior varsity football game between Bowie High School and Jefferson High School. Two El Paso Border Patrol Agents stopped their vehicle. One of the El Paso Border Patrol Agents approached the car and pointed a pistol at the head of Coach Murillo. The agents searched the car without probable cause or consent. The students were questioned about their national origin and immigration status. These children and their coach were stopped solely because of their Hispanic descent. The subsequent lawsuit found that the agents violated the civil rights of the students and their coach.

59.     This case and many others have typified the relationship between immigration enforcement and Mexican Americans in Texas, and in El Paso County specifically. This unequal enforcement is based on racial classification or national origin animus.

60.     TOPEF's mission is to improve the lives of low and moderate-income Texas families by building power through community organizing and civic engagement.  TOPEF was founded in December 2009 by a group of seasoned community organizers, grassroots community leaders and an Advisory Committee that includes renowned policy experts, union presidents, and progressive civic leaders from around the state.  TOPEF has over 140,000 supporters across the state, most of whom are African American and Latino and organize around issue areas such as: jobs and job training, criminal justice reform, neighborhoods of opportunity, access to health care, improving public schools, and immigrant rights.

61.     TOPEF has successfully organized to effect local policy change and grow the electorate in three counties. Among other things, the work of TOPEF's trained community leaders has won the allocation of $1 million toward street lights for San Antonio's low-income, predominantly Latino west-side neighborhoods, won an alternative disciplinary program to tackle the "School to Prison Pipeline" problems in Dallas Independent School District, and secured a policy within DISD that bans discretionary suspensions for Pre-K through second grade students. TOPEF's work has consistently targeted 200,000 low propensity voters and has empowered them to see the impact of voter participation and community organizing.

62.     TOPEF has also suffered racial classification or national origin animus while engaged in TOPEF's organizing and education activities. If SB 4 goes into force, TOPEF has a reasonable expectation that this animus against its employees and the people it serves will increase

significantly, as law enforcement leaders will be prevented from ordering their subordinates not to engage in unjustified immigration-status and place of birth-related questioning.

**63.**     TOPEF serves citizens, non-citizens, and people of Hispanic heritage.

**64.**     SB4 would force TOPEF to divert resources from critical programs in order to educate and assist TOPEF's clients, constituents and service population about SB4.

**65.**     TOPEF's organizational goals will be negatively impacted by SB4 because TOPEF organizers will have a harder time encouraging clients to participate in TOPEF programs because the clients will be worried that their participation will make them subject to inquiries about their immigration status by law enforcement because of SB4.

**66.**     TOPEF also fears that its current constituents and service population will be deterred from seeking help from TOPEF because local law enforcement may detain and inquire into their immigration status during their participation with TOPEF activities.

### C.  Fourteenth Amendment  - Due Process Facts

**67.**     SB 4 never defines "Sanctuary City" or "Sanctuary Jurisdiction". It does not define "materially limiting" in relation to "immigration laws," which is itself a term without meaningful definition.   It does not define "pattern or practice" in relation to a material limitation or prohibition of federal immigration laws. It does not define "endorse" or "citizen."

**68.**     Each of these phrases and terms are material to the enforcement of SB 4. Jurisdictions misinterpreting these terms face dire civil consequences. There are other inconsistencies within the law as well.

**69.**     The failure to define these important phrases is an unconstitutional delegation of authority to the courts and gives little notice or certainty to those affected concerning which behaviors are proscribed.

70. The terms used in the statute are so without definition that an average person could not understand what behaviors are prohibited or give rise to penalties under SB 4.

71. SB 4 is also overly broad and proscribes behaviors that cannot be criminal or civilly penalized.

72. SB 4 is unconstitutionally vague.

### D. Fourth Amendment - Illegal Search and Seizure

73. SB 4 will allow unlawful detentions and the use of national origin and race for unlawful searches and seizures.

74. SB 4 allows law enforcement personnel, including college campus law enforcement officials, to make inquiries into the national origin of any individual detained for any period of time. Jurisdictions are specifically disallowed from prohibiting law enforcement personnel from inquiring into national origin at the point of detention, arrest, or custody.

75. SB 4 allows and creates the opportunity for pre-textual vehicle stops or other investigation, which will form the basis for racial profiling by law enforcement personnel in Texas.

76. SB 4 violates the Fourth Amendment of the U.S. Constitution.

### E. Federal Preemption Facts

77. SB 4 mandates that local entities must comply with all ICE detainer requests and disallows local entities from adopting policies or procedures that prohibit or materially limit the enforcement of "immigration laws."

78. Taken together, because of SB 4, no Texas local entity will be able to adopt, enact, execute, administer or endorse policy that is not exactly congruous with Texas' perverse vision of compliance with the enforcement of federal immigration law.

79.     Local law enforcement will become an instrument of the federal government and will have no discretion or ability to fail to comply with the dictates of the federal government as to federal immigration law. This is true no matter how full a jail will become. This is true no matter how much money is spent on litigation or detention involving ICE detainers. This will be true no matter any other exigent circumstance that might justify non-compliance with federal immigration laws in a specific instance. SB 4 turns local entities into arms of the federal government and usurps the prerogative of the federal government as to its immigration laws.

80.     Federal law controls what constitutes compliance with federal immigration law by local entities. SB 4 seeks to re-define this compliance and usurps the role of the federal government.

81.     Federal law defines ICE detainer requests as voluntary for local jurisdictions. SB 4 re-defines these voluntary requests and intrudes into the sovereignty of the United States.

82.     SB 4 is in disharmony with the United States Constitution, federal immigration law, and all other federal laws.

83.     SB 4 expressly conflicts with the United States Constitution, federal immigration law, and other federal laws.

84.     SB4 does impliedly conflict with, or imposes an obstacle to, the United States Constitution, federal immigration law, or other federal laws.

85.     Federal regulation of immigration is so pervasive as to occupy the entire field of immigration law and disallows Texas from passing SB 4.

86.     SB 4 violates the Supremacy Clause.

### F.  First Amendment Facts

87.     SB 4 disallows the endorsement of any policy that would prohibit or materially limit the enforcement of immigration laws. Although the term "endorse" is not defined in statute, its common definitions include verbal expression and public statements regarding policy proposals.

88.     The State of Texas has sued several public officials and a non-profit organization, the Mexican American Legal Defense and Education Fund (MALDEF), seemingly based on their public statements that SB 4 is unconstitutional. MALDEF is not a policy maker nor has any governmental control of any policy or procedure that would be implicated by SB 4's mandates or prohibitions. Instead, MALDEF was sued based by the State of Texas based solely on their policy advocacy against SB 4.

89.     SB 4 allows the removal of public officials via *quo warranto* for the endorsement of a policy in violation of SB 4. Proof of the violation of SB 4 can be established by a public statement of the public official. Therefore, SB 4 seeks to governmentally-control free expression by public officials and local entities against public speech or endorsements of immigration policies that disagree with SB 4. The prohibition of an endorsement of a policy that conflicts with SB 4 is overly broad and not reasonably calculated to permissibly limit public policy dissent.

### V.     Causes of Action/Violations of Law

### A.  SB 4 Violates the Fourteenth Amendment's Equal Protection Clause and was passed with an Impermissible Purpose

90.     Plaintiffs incorporate by reference all factual allegations in paragraphs 1-89 as if set forth herein.

**91.**     The Fourteenth Amendment to the United States Constitution guarantees persons the equal protection of the laws, and prohibits the government from treating persons differently than a similarly situated individual.

**92.**     SB 4's requirement that local law enforcement comply with federal authorities in the enforcement of immigration laws does have a discriminatory purpose.

**93.**     SB 4's requirement that local law enforcement not prevent peace officers from verifying immigration status of a person does have a discriminatory purpose.

**94.**     Racial discrimination and national origin animus is a substantial or motivating factor behind SB 4 and Texas law.

**95.**     The historical background and legislative history of SB 4 and other similar bills indicates discriminatory intent.

**96.**     The justifications and policy rationales for SB 4 are pre-textual and obfuscate an impermissible discriminatory purpose.

**97.**     Texas enacted SB 4 to set a policy of complying with federal immigration authorities, in order to discriminate against one particular race or group of people based predominantly on account of their race or national origin.

**98.**     The enactment of SB 4 deviates from the normal procedural sequence of passing laws in Texas.

**99.**     SB 4 does bear more heavily on persons from one race than another.

**100.**     SB 4 does bear more heavily on persons of one national origin than another.

**101.**     SB 4 violates the Fourteenth Amendment of the United States Constitution.

**102.**     SB 4 was adopted with a discriminatory and impermissible purpose in violation of the Fourteenth Amendment of the United States Constitution.

### B. Fourteenth Amendment – Due Process Clause

**103.**   Plaintiffs incorporate by reference all factual allegations in paragraphs 1-89 as if set forth herein.

**104.**   SB 4 fails to define key terms and gives no notice to the average person what behaviors give rise to penalties under the law.

**105.**   Every law must state explicitly what it mandates and what is enforceable.

**106.**   Definitions must be given for potentially vague terms, especially critical terms.

**107.**   A statute is void for vagueness if a legislature's delegation of authority to judges and/or administrators is so extensive that it would lead to arbitrary prosecutions or penalties.

**108.**   The due process clause of the Fourteenth Amendment requires notice of criminal behavior and those with stringent civil penalties, like removal from office.

**109.**   Sb 4 violates the due process clause of the Fourteenth Amendment.

### C. SB 4 Violates the Fourth Amendment

**110.**   Plaintiffs incorporate by reference all factual allegations in paragraphs 1-89 as if set forth herein.

**111.**   The Fourth Amendment, incorporated and made applicable to Texas by the Fourteenth Amendment to the United States Constitution, prohibits unreasonable searches and seizures.

**112.**   To establish a claim for unreasonable seizure, one must show that an arrest is unreasonable.

**113.**   A warrantless arrest is considered unreasonable if, at the moment of the arrest, there is no probable cause for the peace officer to reasonably believe that an unlawful act has been or is being committed.

**114.**    Probable cause does not require proof beyond a reasonable doubt, but only a showing of a fair probability of unlawful activity.

**115.**    The reasonableness of an arrest must also be judged based on what a reasonable peace officer would do under the circumstances, and does not consider the officer's state of mind.

**116.**    The question is whether a reasonable officer believes that the law was violated based on the facts available to that officer.

**117.**    SB 4 violates the Fourth Amendment because it requires law enforcement officers to honor all ICE detainer requests, some of which may result in an unreasonable seizure, if officers do not have the discretion to reject invalid detainers.

**118.**    Some ICE detainers are civil in nature.

**119.**    Neither foreign national origin nor unlawful presence is an element for any state crime in Texas.

**120.**    SB 4 violates the Fourth Amendment.

### D.  Supremacy Clause & Federal Preemption

**121.**    Plaintiffs incorporate by reference all factual allegations in paragraphs 1-89 as if set forth herein.

**122.**    The Supremacy Clause of the United States Constitution provides that "[t]his Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding." U.S. Const. art. VI, cl. 2.

**123.**    The Supremacy Clause provides that federal law may expressly or impliedly preempt Texas or local laws.

**124.** SB4 is in disharmony with the United States Constitution, federal immigration law, and all other federal laws.

**125.** SB4 does expressly conflict with the United States Constitution, federal immigration law, or any other federal law.

**126.** SB4 does impliedly conflict with, or imposes an obstacle to, the United States Constitution, federal immigration law, or other federal laws.

**127.** Federal regulation of immigration, especially as to the definition of Sanctuary Cities, is so pervasive as to occupy the field immigration enforcement and disallows Texas from passing SB 4.

**128.** SB 4 violates the Supremacy Clause.

### E.  SB 4 violates the First Amendment

**129.** Plaintiffs incorporate by reference all factual allegations in paragraphs 1-89 as if set forth herein.

**130.** "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances." U.S. Const. Art. V, cl. 1.

**131.** The First Amendment, incorporated and made applicable to Texas by the Fourteenth Amendment to the United States Constitution, prohibits government-control of speech and expression.

**132.** SB 4 allows the removal of a duly elected or appointed governmental official from public office for a violation of SB 4. Proof of that violation includes a public statement of the public official's conduct in violation of SB 4.

**133.**     Further, SB 4 disallows the endorsement of policies in contradiction with SB 4.

**134.**     To the degree that SB 4 seeks to constrain public expression or policy advocacy for policies that materially limit or prohibit state enforcement of federal immigration laws, then it violates the First Amendment's guarantee of freedom of expression.

### F.   State Law Claim – SB 4 Violates the Separation of Powers

**135.**     Plaintiffs incorporate by reference all factual allegations in paragraphs 1-89 as if set forth herein.

**136.**     Pursuant to Art. II, § 1 of the Texas Constitution, the sovereign power of our state government is divided into three distinct, but equal branches: the legislative; the executive; and the judicial.

**137.**     Texas's separation-of-powers provision may be violated in one of two ways: (1) when one branch of government assumes or is delegated a power more properly attached to another branch or (2) when one branch unduly interferes with another branch so that the other branch cannot effectively exercise its constitutionally assigned powers. Any attempt by one department of government to interfere with the powers of another is null and void

**138.**     Each elected county official has a delegated sphere of authority that cannot be invaded. However, this sphere of authority covers only those duties that the Texas Constitution and statutes specifically delegate to the officer.

**139.**     The Texas Legislature holds the exclusive power to make law, including the sole authority to establish criminal offenses and designate applicable penalties, consistent with other federal and state law, as well as principles of federalism.

**140.**     The Texas Constitution provides that the Commissioners Court "shall exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws

of the State, or as may be hereafter prescribed." TEX. CONST. art. V, § 18. The Texas Constitution establishes the Commissioners Court as the county's principal governing body. The powers and duties of the Commissioners Courts include aspects of legislative, executive, administrative, and judicial functions. In the exercise of its powers and jurisdiction over county business, the Commissioners Court has implied authority to exercise broad discretion to accomplish the purposes intended.

**141.**    The Texas Constitution provides that the duties, qualifications, perquisites, and fees of the Sheriff shall be prescribed by the Legislature. TEX. CONST. Art. V, § 23. The Sheriff is a member of the executive branch. *Ex parte Hall*, 838 S.W.2d 674, 676 (Tex. App. 1992); *Jones v. State*, 176 S.W.3d 47, 52 (Tex. App. 2004). The Sheriff has the power to make and enforce rules, regulations, and policy, as well as the authority to define county law enforcement objectives and choose the means of achieving them. The Sheriff is the county's final policymaker in the area of law enforcement, not by virtue of the delegation by the county's governing body but, rather, by virtue of the office to which the Sheriff has been elected.

**142.**    The offices of County and District Attorney are in the judicial branch of government. TEX. CONST. art. V, § 21. Although the duties of the County and District Attorney are not enumerated in Article V, Section 21, our courts have long recognized that, along with various civil duties, their primary function is to prosecute the pleas of the state in criminal cases. An obvious corollary to a District or County Attorney's duty to prosecute criminal cases is the utilization of his own discretion in the preparation of those cases for trial. Therefore, under the separation of powers doctrine, the Legislature may not remove or abridge a District or County Attorney's exclusive prosecutorial function, unless authorized by an express constitutional provision.

26

**143.**     In violation of the Texas Constitution, SB 4 unduly interferes with El Paso County's ability to exercise its broad discretion in accomplishing its constitutionally assigned duties to provide county government services to all its residents.

**144.**     In violation of the Texas Constitution, SB 4 unduly interferes with the El Paso County Sheriff's constitutional duty as the county's final policymaker in the area of law enforcement. SB 4 unconstitutionally removes from the Sheriff any and all discretion to make and enforce rules, regulations, and policy regarding his officers' interactions with federal immigration officials, as well as his authority to define county law enforcement objectives and choose the means of achieving them consistent with federal immigration law.

**145.**     In violation of the Texas Constitution, SB 4 unduly interferes with the El Paso County Attorney's exclusive prosecutorial function. Moreover, SB 4 unduly interferes and conflicts with the El Paso County Attorney's discretion regarding her duty to protect victims—including victims of domestic violence and child abuse.

## VI.     DECLARATORY JUDGMENT

**146.**     In the alternative, Plaintiffs El Paso County and Sheriff Wiles' adherence to the County's adopted policies in relation to federal immigration enforcement comply with SB 4.

**147.**     Plaintiffs have no adequate or available administrative remedy, or, in the alternative, any effort to obtain an administrative remedy would be futile.

**148.**     Plaintiffs have no adequate remedy at law.

**149.**     Absent declaratory relief, Plaintiffs will continue to be harmed.

## VII.     PRAYER FOR RELIEF

**150.**     WHEREFORE, Plaintiffs pray that the Court grant the following relief:

    1)   Declare SB 4 unconstitutional and invalid on its face;

2) Enjoin Defendants from enforcing SB 4;

3) In the alternative, declare that El Paso and its County officials and their policies
   comply with state law, including SB 4;

4) Award Plaintiffs court costs and reasonable attorneys fees and grant any other relief
   to plaintiff as allowed by law and that the Court should deem fit.

DATED:  May 22, 2017                      Respectfully,


                                          By: /s/ Jose Garza


                                          GARZA GOLANDO MORAN, PLLC
                                          Jose Garza
                                          Attorney-In-Charge
                                          garzpalm@aol.com
                                          Texas Bar No. 07731950
                                          Michael Moran
                                          michael@ggmtx.com
                                          State Bar No. 2409285
                                          Martin Golando
                                          marty@ggmtx.com
                                          State Bar No. 24059153
                                          115 E. Travis St., Ste. 1235
                                          San Antonio, Texas 78205
                                          (210) 892-8543
                                          Attorneys for Plaintiffs EL PASO COUNTY; and
                                          RICHARD WILES, SHERIFF OF EL PASO
                                          COUNTY

                                          Jo Ann Bernal
                                          El Paso County Attorney
                                          500 E. San Antonio
                                          5th Floor, Suite 503
                                          El Paso, Texas 79901
                                          Phone (915) 546-2050

Attorney for Plaintiffs EL PASO COUNTY;
RICHARD WILES, SHERIFF OF EL PASO
COUNTY


Mimi Marziani
State Bar No. 24091906
Texas Civil Rights Project
1405 Montopolis Drive
Austin, Texas 78741
T: (512) 474-5073
mimi@texascivilrightsproject.org

Efrén C. Olivares
Texas Bar No. 24065844
Texas Civil Rights Project
1017 W. Hackberry Ave.
Alamo, Texas 78516
T: (956) 787-8171
efren@texascivilrightsproject.org

Attorneys for Plaintiff TEXAS ORGANIZING
PROJECT EDUCATION FUND